UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **PATRIOTS BANK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21CV991 HEA |
| | ) |
| **CHRISTOPHER and REGINA HARBISON,** | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 18]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be denied.,

**Facts and Background**

Plaintiff's Amended Petition[1] alleges the following:

On August 15, 2018, Black River Motel, LLC ("Black River") executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to Black River in the original principal amount of $278,862.00 (the "Black River Note"). To secure repayment of the amounts owing under the Black River Note, Black River executed a Deed of Trust on August 15, 2018 (the "Black River Deed

---

[1] For the purposes of this Opinion, the Court uses the terminology chosen by Plaintiff. Under Rule 3 of the Federal Rules of Civil Procedure, a civil action is commenced by filing a complaint with the court.

of Trust"), granting the Bank a first priority lien on, inter alia, certain real property and personal property located in Reynolds County, MO, (the "Black River Collateral"). To further secure repayment of the Black River Note, Christopher Harbison executed a Guaranty in favor of the Bank, thereby guaranteeing all obligations owed by Black River to the Bank (the "Black River Guaranty").

On June 23, 2016, CHAB Development, LLC ("CHAB") executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to CHAB in the original principal amount of $150,000.00 (the "First CHAB Note"). To secure repayment of the amounts owing under the First CHAB Note, Harbison Lumber Co., LLC executed a Security Agreement on June 23, 2016 (the "First Harbison Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by Harbison Lumber Co., LLC. To further secure repayment of the First CHAB Note, Christopher Harbison executed a Guaranty in favor of the Bank, thereby guaranteeing all obligations owed by CHAB to the Bank (the "First CHAB Guaranty").

On August 23, 2018, CHAB executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to CHAB in the original principal amount of 408,739.68 (the "Second CHAB Note"). To secure repayment of the amounts owing under the Second CHAB Note, on August 23, 2018, Harbison Lumber Co., LLC executed a Security Agreement (the "Second Harbison

Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by Harbison Lumber Co., LLC (the "Second Harbison Collateral"). To further secure repayment of the amounts owing under the Second CHAB Note, on August 23, 2018, CHAB Development, LLC executed a Security Agreement (the "First CHAB Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by CHAB Development, LLC, Agreement (the "First CHAB Collateral"). Repayment of the amounts owing under the Second CHAB Note was further secured by a Security Agreement previously executed on October 30, 2014 by CHAB Development, LLC (the "Second CHAB Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by CHAB Development, LLC, (the "Second CHAB Collateral"). Repayment of the amounts owing under the Second CHAB Note was further secured by a Security Agreement previously executed on May 5, 2017 by CHAB Development, LLC (the "Third CHAB Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by CHAB Development, LLC, (the "Third CHAB Collateral"). To further secure repayment of the Second CHAB Note, Christopher Harbison executed a Guaranty in favor of the Bank, thereby guaranteeing all obligations owed by CHAB to the Bank (the "Second CHAB Guaranty").

On November 1, 2019, CRAZ Investments, LLC ("CRAZ") executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to CRAZ in the original principal amount of $2,998,919.50 (the "CRAZ Note"). 21. The amounts owing under the CRAZ Note were secured by a Deed of Trust previously executed on August 21, 2018 by CRAZ (the "First CRAZ Deed of Trust"), granting the Bank a first priority lien on, inter alia, certain real property and personal property located in Washington County, MO, (the "First CRAZ Collateral").  The amounts owing under the CRAZ Note were further secured by a Deed of Trust previously executed on April 30, 2019 by CRAZ (the "Second CRAZ Deed of Trust"), granting the Bank a first priority lien on, inter alia, certain real property and personal property located in Washington County, MO, (the "Second CRAZ Collateral").  The amounts owing under the CRAZ Note were further secured by a Deed of Trust previously executed on June 18, 2019 by CRAZ (the "Third CRAZ Deed of Trust"), granting the Bank a first priority lien on, inter alia, certain real property and personal property located in Washington County, MO, (the "Third CRAZ Collateral").  To further secure repayment of the amounts owing under the CRAZ Note, Christopher Harbison executed a Guaranty in favor of the Bank, thereby guaranteeing all obligations owed by CRAZ to the Bank (the "Christopher CRAZ Guaranty"). To further secure repayment of the amounts owing under the CRAZ Note, Regina S. Harbison executed a Guaranty in favor of

4

the Bank, thereby guaranteeing all obligations owed by CRAZ to the Bank (the "Regina CRAZ Guaranty").

On May 31, 2018, Jonesburg Sawmill & Pallet Co., Inc. ("Jonesburg") executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to Jonesburg in the original principal amount of $351,775.00 (the "First Jonesburg Note").

On May 31, 2018, Jonesburg executed a Promissory Note in favor of the Bank, evidencing a loan made by the Bank to Jonesburg in the original principal amount of $1,005,065.68 (the "Second Jonesburg Note").

To secure repayment of the amounts owing under the First Jonesburg Note and Second Jonesburg Note, on May 31, 2018, Jonesburg executed a Security Agreement (the "Jonesburg Security Agreement"), granting the Bank a first priority lien on, inter alia, certain personal property owned by Jonesburg, (the "First Jonesburg Collateral").  To further secure repayment of the amounts owing under the Second Jonesburg Note, Jonesburg executed a Deed of Trust on May 31, 2018 (the "Jonesburg Deed of Trust"), granting the Bank a first priority lien on, inter alia, certain real property and personal property located in Montgomery County, MO, (the "Second Jonesburg Collateral"). To further secure repayment of the amounts owing under the First Jonesburg Note Christopher Harbison executed a Guaranty in favor of the Bank, guaranteeing all obligations owed by Jonesburg to

5

the Bank (the "First Christopher Jonesburg Guaranty"). To further secure repayment of the amounts owing under the Second Jonesburg Note Christopher Harbison executed a Guaranty in favor of the Bank, guaranteeing all obligations owed by Jonesburg to the Bank (the "Second Christopher Jonesburg Guaranty"). To further secure repayment of the amounts owing under the First Jonesburg Note Regina Harbison executed a Guaranty in favor of the Bank, guaranteeing all obligations owed by Jonesburg to the Bank (the "First Regina Jonesburg Guaranty"). To further secure repayment of the amounts owing under the Second Jonesburg Note Regina Harbison executed a Guaranty in favor of the Bank, guaranteeing all obligations owed by Jonesburg to the Bank (the "Second Regina Jonesburg Guaranty").

    The Black River Note, Black River Deed of Trust, Black River Guaranty, First CHAB Note, First Harbison Security Agreement, First CHAB Guaranty, Second CHAB Note, Second Harbison Security Agreement, First CHAB Security Agreement, Second CHAB Security Agreement, Third CHAB Security Agreement, Second CHAB Guaranty, CRAZ Note, First CRAZ Deed of Trust, Second CRAZ Deed of Trust, Third CRAZ Deed of Trust, Christopher CRAZ Guaranty, Regina CRAZ Guaranty, First Jonesburg Note, Second Jonesburg Note, Jonesburg Security Agreement, Jonesburg Deed of Trust, the First Christopher Jonesburg Guaranty, the Second Christopher Jonesburg Guaranty, the First Regina

Jonesburg Guaranty and the Second Regina Jonesburg Guaranty and all modifications, extensions or amendments thereof are hereinafter referred to as the "Loan Documents."

Under the Loan Documents, Black River, CHAB, CRAZ and Jonesburg (collectively, the "Borrowers") are liable to the Bank for all costs,, expenses and attorneys' fees incurred by the Bank in enforcing the Loan Documents and all rights and remedies thereunder.

On April 21, 2021, the Bank sent a letter to counsel for the Borrowers and Guarantors, itemizing the existing defaults of the Borrowers under the Loan Documents and explaining the necessary cure and a deadline by which such cure must be completed ("April 21 Letter"). On May 7, 2021, the Bank sent a letter to counsel for the Borrowers and Guarantors, which was in response to correspondence from Borrowers' and Guarantors' counsel dated May 3, 2021 and a telephone conversation between the Bank's counsel and Borrowers' and Guarantors' counsel (the "May 7 Letter"). The May 7 Letter indicated that it was in the best interest of all parties to terminate the banking relationship and outlined the Bank's expectations with respect to each of the loans made by the Bank.

On June 10, 2021, the Bank sent a letter to counsel for the Borrowers and Guarantors, notifying the Borrowers and Guarantors that each of the Borrowers

7

were in default under the Loan Documents for multiple reasons, including but not limited to, (i) failure to pay property taxes when due, (ii) transfer of Collateral without authorization, (iii) failure to make all payments when due under the Loan Documents, and (iv) failure to provide financial records and tax returns, and that the indebtedness due under the Loan Documents was accelerated and all amounts were immediately due and owing, and demanded payment (the "Acceleration Letter").

As of the filing date, Borrowers remain in default under the Loan Documents for (i) failure to pay property taxes when due, (ii) transfer of Collateral without authorization, (iii) failure to make all payments when due under the Loan Documents, and (iv) failure to provide financial information.

As of June 24, 2021, Black River is indebted to the Bank under the Black River Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorneys' fees: $258,031.46 in principal, accrued interest, and late fees, plus interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "Black River Indebtedness").

As of June 24, 2021, CHAB is indebted to the Bank under the First CHAB Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorney's fees: $63,647.96 in principal, accrued interest, and late fees, plus

interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "First CHAB Indebtedness").

As of June 24, 2021, CHAB is indebted to the Bank under the Second CHAB Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorney's fees: $182,709.99 in principal, accrued interest, and late fees, plus interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "Second CHAB Indebtedness").

As of June 24, 2021, CRAZ is indebted to the Bank under the CRAZ Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorney's fees: $2,950,870.54 in principal, accrued interest, and late fees, plus interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "CRAZ Indebtedness").

As of June 24, 2021, Jonesburg is indebted to the Bank under the First Jonesburg Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorney's fees: $285,115.52 in principal, accrued interest, and late fees, plus interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "First Jonesburg Indebtedness").

As of June 24, 2021, 2021, Jonesburg is indebted to the Bank under the Second Jonesburg Note in the following amounts, plus all accruing interest, later charges, fees, costs, and attorney's fees: $978,400.18 in principal, accrued interest,

and late fees, plus interest thereafter at the per diem default rate set forth in the Loan Documents (collectively, the "Second Jonesburg Indebtedness").

Defendants move to dismiss the Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

## Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need

10

detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

## Discussion

Defendants argue Plaintiff did not specifically detail that each borrower was in default, rather, it alleged the borrowers were collectively in default on the specific loans or that the debts were properly accelerated. Further, Defendants argue there is a failure to show any specific defaults for each of the Defendants. Defendants further detail what they perceive are irregularities in the notifications of default and failures of the notices to Defendants. Defendants misperceive the purpose of a motion to dismiss, *i.e.*, to challenge the sufficiency of complaint in notifying defendants of the claims against them. Defendants are, in actuality, arguing Plaintiff cannot prove its case for recovery. Although Defendants may challenge Plaintiff's proof in later proceedings, for the purposes of a motion to dismiss under Rule 12(b)(6), a complaint need only set forth sufficient facts to plausibly state a claim for relief. Accepting the allegations in the Amended

11

Petition as true, the Amended Petition precisely satisfies this standard. It apprises Defendants of the specific loans it claims are in default, the reliance on the guarantees executed by Defendants to further secure the loans, the basis for the alleged defaults, and the amounts Plaintiff claims it is due.

## Conclusion

Plaintiff's Amended Petition sufficiently sets forth claim based on the Defendants' guaranties

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 18], is **DENIED**.

Dated this 8th day of July, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE